UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DENZIL JACKSON,

v.  Case No. 8:13-cv-98-T-33MAP
    8:09-cr-478-T-33MAP

UNITED STATES OF AMERICA.
_____/

**ORDER**

This cause is before the Court on Jackson's timely-filed 28 U.S.C. § 2255 motion to vacate, set aside, or correct an illegal sentence. (Doc. cv-1; cr-117). After review of the record and applicable case law, for the reasons stated below, the Court denies Jackson's § 2255 motion.

**I. Background**

**A. Procedural History**

Jackson was indicted for conspiracy to distribute marijuana in violation of 21 U.S.C. § 846 on October 21, 2009. (Doc. cr-1). Following a three-day trial, a jury found Jackson guilty of the conspiracy. (Doc. cr-68, 70, 73, 74, 105, 107, 108). On September 30, 2010, this Court sentenced Jackson to 235 months incarceration. (Doc. cr-89, 90). Jackson appealed his conviction and sentence which was affirmed by the Eleventh Circuit on October 19, 2011. United States v. Jackson, 443 Fed. App'x 476 (11th Cir. 2011). (Doc. cr-112).

On January 7, 2013, Jackson signed and constructively filed the present 28 U.S.C. § 2555 motion to vacate, raising multiple claims of ineffective assistance of counsel. (Doc. cv-1; cr-117). On March 28, 2014, this Court entered an Order denying all but two of Jackson's claims. (Doc. cv-16). The Order specified that Jackson was entitled to an evidentiary hearing limited to the following: (1) whether defense counsel was ineffective for failing to communicate a plea offer to Jackson and advise Jackson relative to the plea offer, and (2) whether defense counsel was ineffective for failing to prepare Jackson for his trial testimony. (Id.).

On May 29, 2014, this Court held an evidentiary hearing on Jackson's § 2255 motion. (Doc. cv-25). Jackson, who was present at the hearing, was represented by Court-appointed counsel.

**B.   Testimony at the Evidentiary Hearing**

**1. Denzil Jackson's Testimony**

Jackson testified that trial counsel, Howard Anderson, failed to communicate a plea offer and to advise Jackson about the plea. (Doc. cv-26 at 10-11). Jackson testified that he met with counsel on "five or six occasions" and that he talked with counsel about the possibility of pleading guilty to the charge "[q]uite a few times," a "safety valve," a transcript

2

from a co-conspirator's trial, and the "sentencing guideline." (Id. at 9-11, 18, 22). Although Jackson attested that counsel could not assure him of a sentence, Jackson did testify that counsel thought there was a way for him to receive a sentence of less than ten years. (Id. at 13). Furthermore, Jackson claimed that Anderson never told him that his sentence might increase beyond the ten-year minimum mandatory if he went to trial. (Id. at 15). According to Jackson, he believed that, if he pled guilty, he would waive his right to appeal. (Id. at 14-15). In response to questioning by opposing counsel, Jackson acknowledged that, in order to plead guilty, he would have had to admit that he knowingly and willfully participated in the marijuana conspiracy. (Id. at 25).

Jackson also testified that he never met with anyone prior to trial to prepare him to testify; he never talked with Anderson about what would happen on direct examination versus cross-examination; and no one prepared him for cross-examination. (Id. at 15-17). However, Jackson testified that he met with Public Defender Investigator Idalia Hartley to "discuss the evidence that was against [him]." (Id.). Furthermore, Jackson admitted that Hartley prepared an analysis and discussed Jackson's bank statements with him prior to trial. (Id.).

3

### 2. Public Defender Howard Anderson's Testimony

Anderson testified that he had worked for the Office of the Federal Defender with the Middle District of Florida for over eight and one half years. (Id. at 36). He further testified that he worked as an Assistant District of Attorney in New Orleans from 1995-1997, an Assistant State Defender from 1997-2003, and an Assistant State's Attorney from 2003-2006. (Id. at 59). In his nineteen years, Anderson has worked on over one hundred jury trials. (Id. at 62).

According to Anderson, he gave Jackson his opinion that he "didn't think it was the strongest case defense-wise" and that "this is going to be [a] very tough sell to the jury that [Jackson] didn't know what was going on." (Id. at 38, 44). Anderson also testified that he requested a plea agreement on Jackson's behalf and reviewed the plea agreement with Jackson on April 7, 2010. (Id. at 39-41). Anderson's attorney case progress notes corroborate the assertion that he reviewed the plea agreement with Jackson. (Id.). Specifically, Anderson testified that he wrote a case progress note for Jackson on April 10, 2010, stating the following: "[m]eeting with client. Invest[igator] present. Discussed, reviewed plea agreement, advised client if client

4

pled, had many positives to get case sentencing time down. Client leaning toward pleading, to talk to family." (Id. at 41).

Anderson attested that he met with Jackson and his family on April 22, 2010, to discuss Jackson's case and the option of pleading guilty. (Id. at 43-44). During the meeting, Anderson stated that if Jackson pled guilty, he would get under ten years imprisonment and that his sentence could even be lower if he cooperated. (Id. at 45-47). However, Anderson cautioned that pleading guilty would mean Jackson gave up his right to appeal. (Id.). Anderson further testified that he discussed the plea agreement with Jackson the morning of trial, after the United States indicated that the plea agreement was still available. (Id. at 53-54). According to Anderson, Jackson rejected the plea agreement at that time. (Id.).

Anderson testified that he discussed with Jackson his right to testify, the process of direct examination and cross-examination, his anticipated testimony, and the testimony of other witnesses prior to Jackson's testifying at trial. (Id. at 39, 44, 51-52, 60-61, 64-65). According to Anderson, he had ongoing discussions with Jackson during the trial regarding Jackson's testimony. (Id.). Furthermore, Anderson testified that he prepped Jackson the night before Jackson

5

testified. (Id.).

Anderson attested that he told Jackson that he could be convicted and that, if he pled guilty, his sentence would be significantly lower than if he went to trial and was convicted. (Id. at 65-66, 79). According to Anderson, Jackson knew the risks of going to trial. (Id.). In response to questioning by opposing counsel, Anderson stated that, in order to prepare for cross-examination prior to trial, "[w]e went through each one [of the transactions that showed up on Jackson's bank statements] individually." (Id. at 64).

### 3. Public Defender Investigator Idalia Hartley's Testimony

Hartley testified that she remembered Anderson's reviewing a plea agreement with Jackson "[v]ery clearly" and that Anderson and Hartley "went over and over and over the plea agreement just to make sure that he understood everything that was being said to him." (Id. at 83-84). According to Hartley, she also spent "a whole lot of time" putting together a timeline with Jackson prior to trial, and explained to him that it "didn't make too much sense." (Id. at 84-85). Hartley conceded that she could not recall whether Anderson placed a physical plea agreement in front of Jackson. (Id. at 88).

6

**4.    Public Defender Leonard Clark's Testimony**

Clark testified that he went through the sentencing guidelines with Jackson and explained that the obstruction of justice enhancement could increase the sentencing guidelines level if Jackson testified at trial and the district court found him guilty of perjury.[1] (Id. at 91-92, 96). Clark also testified that he helped prepare Jackson for his testimony at trial; went over a timeline of events with Jackson; and expressed concerns that he had about Jackson's "story" to Jackson. (Id. at 93-94).

**5.    Charlton Jackson's Testimony**

Charlton Jackson, Denzil Jackson's brother, testified that he attended a meeting in Anderson's office with Anderson, Denzil Jackson, Denzil Jackson's wife, a friend named Felix, an assistant, and another lawyer. (Id. at 31). During the meeting, Anderson and Denzil Jackson discussed whether he should plead guilty or go to trial. (Id.). Charlton Jackson testified that Anderson did not show a written plea agreement

---

[1] A finding of perjury is necessary for an obstruction of justice enhancement, although the district court need not address each element of the alleged perjury in a separate and clear finding. United States v. Dunnigan, 507 U.S. 87, 95 (1993) (abrogated on other grounds by United States v. Wells, 519 U.S. 482 (1997)); accord United States v. Hatney, 80 F.3d 458, 463 (11th Cir. 1996).

7

to Denzil Jackson during that meeting. (Id. at 32).

## II. Legal Standard

Claims of ineffective assistance of counsel are cognizable under 28 U.S.C. § 2255. See Lynn v. United States, 365 F.3d 1225, 1234 n.17 (11th Cir. 2004) (ineffective assistance claims should be decided in section 2255 proceedings). Lafler v. Cooper, 132 S. Ct. 1376 (2012) and Missouri v. Frye, 132 S. Ct. 1399 (2012) extend a criminal defendant's Sixth Amendment right to effective assistance of counsel to plea negotiations.

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Under the first prong, Jackson must establish that his attorney's performance was deficient by demonstrating by a preponderance of the evidence "that particular and identified acts or omissions of counsel 'were outside the wide range of professionally competent assistance.'" Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (citations omitted). This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the

Sixth Amendment. In deciding whether a trial attorney's performance was deficient, the courts are "highly deferential" and "indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Id. at 1314 (internal quotation marks omitted). It is Jackson's burden to "establish that no competent counsel would have taken the action that his counsel did take." Id. at 1315.

Under the second prong of the Strickland test, Jackson is required to show "that there is a reasonable probability that, but for [his] counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Strickland's inquiry into whether the result of the proceeding would have been different "requires looking not at whether the defendant would have proceeded to trial absent ineffective assistance but whether he would have accepted the offer to plead pursuant to the terms earlier proposed." Frye, 132 S. Ct. at 1410. "The defendant in a criminal case has a fundamental constitutional right to testify in his own behalf at trial." United States v. Camacho, 40 F.3d 349, 355 (11th Cir. 1994).

If a petitioner cannot meet one of Strickland's prongs,

9

this Court need not address the other prong. Strickland, 466 U.S. at 697.

**III. Analysis**

    **A. Whether counsel failed to communicate a plea offer and advise Jackson regarding the plea offer**

The Court finds Anderson's testimony that he communicated a plea offer and advised Jackson regarding the plea offer credible. Jackson has not demonstrated that Anderson was deficient in causing the rejection of a plea agreement which subsequently led to a trial and a more severe sentence than he would have received had he pled guilty. Jackson was represented throughout his criminal proceedings by experienced, effective, and competent counsel. In light of the record, it is clear that Jackson communicated the proposed plea agreement to Jackson.

Specifically, the record indicates that Anderson engaged in plea negotiations on Jackson's behalf, presented a physical copy of the plea agreement to Jackson, and discussed the plea agreement with Jackson on more than one occasion. (Doc. cv-26 at 39-41, 53-54). As Anderson's case progress notes specify, Anderson met with Jackson on April 7, 2010, reviewed the plea agreement with Jackson, and advised Jackson with respect to the plea agreement. (Id. at 41). The record

also indicates that Hartley remembered Anderson's reviewing a plea agreement with Jackson "[v]ery clearly" and that Anderson and Hartley "went over and over and over the plea agreement [with Jackson] just to make sure that he understood everything that was being said to him." (Id. at 83-84). Even Jackson's own testimony supports the Court's finding that Anderson reviewed the plea agreement with Jackson prior to trial. (Id. at 14-15).[2]

Despite being advised of the difficulties that his case presented, Jackson, not Anderson, made the decision to go to trial. Anderson discussed the potential penalties if Jackson were convicted, the strength of the United States' case, and his option of pleading guilty. Accordingly, the record reflects that Jackson had an adequate basis to make a rational assessment of the pretrial situation, the evidence against him, and the risks of proceeding to trial. Jackson decided to proceed to trial based either on his belief that he was innocent of the charges against him, or a willingness to assume the risk of being found guilty at trial. Jackson

---

[2] At the evidentiary hearing, Jackson stated that he believed that by pleading guilty, he would waive his right to appeal. (Id. at 14-15). The Court notes that the issue of waiving one's appeal in federal court only arises in the context of a written plea agreement.

11

proceeded to trial not withstanding sufficient evidence and communication to him of the seriousness of the charges that he faced and the consequences of a guilty verdict or plea. Having made that decision, and being disappointed both with the verdict and with his sentence, Jackson now has a case of "buyer's remorse," but cannot show constitutionally deficient legal representation by his trial counsel as the reason for the unfavorable outcome.

Even if Jackson could somehow show that counsel's performance was deficient, he cannot establish prejudice as a result of any deficiency on Anderson's part. In other words, Jackson cannot establish that he would have pled guilty but for his counsel's errors and that he would have received a lower sentence than the one he received after being found guilty at trial. As Jackson conceded at the hearing, he knew that in order to plead guilty he would have to admit that he knowingly and willfully participated in the marijuana conspiracy. (Id. at 25). To date, Jackson has never acknowledged his involvement or guilt in the charged offenses. Consequently, he has not made a sufficient showing that, but for his counsel's purported errors, he would have accepted the offer to plead pursuant to the terms earlier proposed.

This claim has no merit.

### B. Whether counsel failed to prepare Jackson for testifying at trial

The Court finds Anderson's testimony that he prepared Jackson for testifying at trial credible. Jackson has not demonstrated that Anderson was deficient in preparing him either for direct examination or cross-examination. Rather, the record reflects that Anderson adequately prepared Jackson to testify at trial and discussed Jackson's testimony with him prior to trial.

Specifically, the record indicates that Anderson discussed with Jackson his right to testify, the process of direct examination and cross-examination, his anticipated testimony, and the testimony of other witnesses prior to Jackson's testifying at trial. (Id. at 39, 44, 51-52, 60-61, 64-65). Anderson consistently and credibly testified that he had numerous discussions with Jackson about his testimony, both prior to and during trial, "went through each one [of the transactions that showed up on Jackson's bank statements] individually," and even prepped Jackson the night before he testified. (Id. at 51-52, 64).

Conversely, the Court finds that Jackson's testimony lacks credibility with respect to his claim that Anderson failed to prepare him to testify at trial because, at the

evidentiary hearing, Jackson asserted that he did not meet with *anyone* to prepare to testify at trial and that *no one* prepared him for cross-examination. (Id. at 15-17)(emphasis added). However, the record indicates otherwise. (Id. at 51-52, 64, 84-85, 93-94). Hartley testified that she spent a "whole lot of time" putting together a timeline with Jackson prior to trial and explained to him that it "didn't make much sense." (Id. at 84-85). Clark testified that he helped prepare Jackson for his testimony at trial by going over a timeline of events with Jackson and expressing concerns about Jackson's story directly to Jackson. (Id. at 93-94). Clark also testified that he either had, or witnessed, discussions with Jackson regarding his testimony. (Id. at 93). Furthermore, Jackson admitted at the evidentiary hearing that he met with Clark to "discuss[] the evidence that was against [him]." (Id. at 15-17).

As previously stated, even if Jackson could somehow show that counsel's performance was deficient, he cannot establish prejudice as a result of any deficiency on Anderson's part. In essence, Jackson's complaint amounts to one of effective cross-examination, not deficient counsel.

This claim has no merit.

Accordingly, it is

14

**ORDERED, ADJUDGED,** and **DECREED:**

(1) The Court adopts and incorporates herein its March 28, 2014, Order (Doc. cv-16) denying all claims except the claims addressed in this Order. Jackson's 28 U.S.C. § 2255 motion to vacate, set aside, or correct an illegal sentence (Doc. cv-1; cr-117) is denied.

(2) The Clerk is directed to enter judgment against Jackson and to close this case.

(3) The Court declines to issue a certificate of appealability because Jackson has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2). Nor will the Court authorize Jackson to proceed on appeal in forma pauperis because such an appeal would not be taken in good faith. See U.S.C. § 1915(a)(3). Jackson shall be required to pay the full amount of the appellate filing fee pursuant to § 1915(b)(1) and (2).

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 18th day of August, 2014.

*[signature]*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record

15